980 A.2d 27

James C. CLIFTON, Charles and Lorrie Cranor, Husband and Wife, and Roy Simmons and Mary Lisa Meier, Husband and Wife, Appellees

v.

ALLEGHENY COUNTY, Appellant

Kenneth Pierce and Stephanie Beechaum, Appellees

v.

Allegheny County, Pennsylvania, Daniel Onorato, its Chief Executive and Deborah Bunn, its Chief Assessment Officer, Appellants.

Supreme Court of Pennsylvania.

Aug. 7, 2009.

## *ORDER*

PER CURIAM.

**AND NOW,** this 7th day of August, 2009, the County's Application for Relief and for Stay of Remand of Record is **DENIED,** and the Prothonotary is directed to remand the record pursuant to Pa.R.A.P. 2752(b)(2). The Application for Counsel Fees of Kenneth Pierce and Stephanie Beechaum, appellees in No. 21 WAP 2007, is **DENIED.** Appellees' request for an award of costs and reasonable counsel fees incurred in responding to the County's Application for Stay and Remand of Record is also **DENIED.**

Justice BAER files a dissenting statement.

Justice BAER, dissenting.

In these cases, this Court upheld the facial validity of the Commonwealth's real property assessment laws, but found that Allegheny County's ("County") assessment system, as applied, violated the Uniformity Clause of the Pennsylvania Constitution, PA. CONST. art. VII, § 1. On May 22, 2009, the County filed an Application for Relief and for Stay of Remand of Record for at least 180 days to allow the General Assembly "the opportunity to consider the enactment of legislation amending the property assessment laws to comport with the constitutional standards enunciated" by this Court in this case. County's Application for Relief at 5–6. Appellees Pierce and Beechaum ("Appellees") filed applications seeking counsel fees for defending both the underlying merits appeal and the County's Application for Relief and Stay of Remand of Record. Today, a majority of this Court denies both applications. I join in full the denial of Appellees' applications for counsel fees. I, however, respectfully dissent from the denial of the County's application for stay of remand.

In the body of the Court's majority opinion in *Clifton,* 969 A.2d 1197, 1231 (2009), we acknowledged that Pennsylvania is the only state in the union that does not statutorily mandate at least periodic assessments of property values for taxation purposes. The Majority further recognized that "the General

Assembly is the appropriate place in the first instance to fashion a more comprehensive and soundly constitutional scheme." *Id.* at 1229.

I wrote a concurring opinion in *Clifton* noting the Majority's call for the General Assembly's involvement, but indicating my belief that "prompt legislative action" was "unlikely." *Id.* at 1232. I argued that this Court should fill the void caused by legislative inaction by articulating a test for determining whether a peculiar assessment scheme would pass Uniformity Clause muster. In a footnote responsive to my concurring opinion, the Majority called my skepticism regarding the likelihood of legislative action "inexplicab[le]," and in substance argued that we should exercise judicial restraint by giving the legislature time to act in response to the *Clifton* opinion. *Id.* at 1229, n. 44. In support of this contention, the Majority cited to Mr. Justice Eakin's concurring opinion in *Commonwealth v. Miller*, 585 Pa. 144, 888 A.2d 624, 633 (2005), in which this Court, in light of the legislature's failure to act, adopted a definition of mental retardation in conjunction with *Atkins v. Virginia*, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002). The Court in *Clifton* quoted the concurrence, observing that "[m]ore than three years ha[d] passed since it was announced that each state had to set standards and procedures for adjudicating the mental retardation of a defendant in a capital case ... no legislation ha[d] been passed to accomplish this." *Clifton*, 969 A.2d at 1229, n. 44. Accordingly, the Majority in *Clifton* argued, "While there may very well come a time when this Court will be obliged to fill a legislative void in this area, it is today's decision that provides notice to the General Assembly to make any necessary amendments to the Commonwealth's property assessment laws so as to ensure their constitutionality when applied in the various counties." *Id.* The Court therefore concluded that we should give the legislature the opportunity to act.

The County's application for stay of remand gives this Court the perfect opportunity to follow the dictates of the Majority in this case by providing the legislature a relatively brief period to, in the Majority's words, "fashion a more comprehen-

sive and soundly constitutional scheme." *Id.* at 1229. To deny the legislature this opportunity prior to any additional reassessment in Allegheny County is, in my view, "inexplicable." As described below, to grant a stay could prevent substantial costs to the County and confusion to taxpayers, school districts, and counties across the state, with only a minor disadvantage to the prevailing Appellees who will have to wait a mere six months for enforcement of our decision, a relatively *de minimis* inconvenience given the past decade of property assessment disorder in Allegheny County.

As noted in my concurring opinion, the consequence of the failure to establish criteria for constitutional assessment will be that each of Pennsylvania's sixty-seven counties, as well as the many municipalities within them, will be unsure whether their county's current assessment is constitutional. *Clifton,* 969 A.2d at 1232. Moreover, the hundreds of thousands of taxpayers and groups that would advocate on their behalf will be equally uncertain. Unnecessary lawsuits will be brought, leading to disparate decisions. Appeals will be taken, and at some point, perhaps three years from now, as was the case in *Miller,* this Court will again face this problem.

It is also worthy to look specifically at the case before us. Allegheny County has already conducted two assessments within 10 years, at the cost of millions of dollars that it and its taxpayers can ill afford. Now it is being called upon to conduct yet another assessment without the knowledge of what criteria it must meet to sustain a constitutional challenge. If history repeats itself, Allegheny County could find itself conducting a fourth assessment within several years, after either the legislature or this Court finally acts. The County and its taxpayers should not be subject to the costs of attempting to hit the moving target of constitutional uniformity, as defined first by the trial court, then by either an intermediate appellate court or this Court, or even as decided by the legislature during the pendency of the Allegheny County litigation.

I cannot understand why we would not save the Allegheny County taxpayers (as well as the other taxpayers in Pennsyl-

vania) the millions of dollars that this litigation and reassessment will cost. Moreover, I believe we can spare all of the parties and the trial court the burdens of this ongoing litigation by permitting the legislature to consider the adoption of statutory criteria. This problem has been evolving for half a century, and a half-year stay to permit a legislative solution is wholly justified.

Moreover, the concept of a stay for legislative action to correct unconstitutionality is not foreign to our jurisprudence. In its application, Allegheny County relied upon *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (invalidating grant of jurisdiction under Bankruptcy Reform Act to non-Article III judges) and *County of Allegheny v. Commonwealth*, 517 Pa. 65, 534 A.2d 760 (1987) (invalidating statutory scheme requiring counties to fund respective court systems in unified judiciary). I acknowledge that these case are factually distinguishable in that both involved constitutional flaws in legislation that only the legislature could fix, where as, in this case, we did not declare the legislation to be unconstitutional, but found that only the application of that legislation in Allegheny County violated the Uniformity Clause.

Although the cases cited can be distinguished on their facts, they nonetheless support a broader proposition followed by this Court in other cases in which we have stayed our decision to allow the legislature to act to prevent unnecessary confusion following the declaration of a statute or action as unconstitutional. Indeed, in *City of Philadelphia v. Commonwealth of Pennsylvania*, 575 Pa. 542, 838 A.2d 566, 586–587 (2003) (declaring that Act 230, which *inter alia* reorganized the governance of the Pennsylvania Convention Center, unconstitutional under the single subject requirement), we stayed our decision pending legislative action:

Having found that Act 230 is inconsistent with Article III, Section 3, it remains to determine the proper remedy.... Thus, rather than presently disturbing the status quo and risking circumstances of ongoing flux, we think it best to stay our decision for ninety days in order to afford time for

the Legislature to consider appropriate remedial measures, or to allow for an orderly transition.

Similarly, in the 1930's, this Court also attempted to ameliorate the effects of an order declaring unconstitutional the funding of Philadelphia's school system by staying its order until the legislature returned to session:

It is a matter of common knowledge that the school system in the city of Philadelphia could not operate on such a restricted basis, pay teachers salaries, and fulfill the needs of the thousands of children whose education and welfare are intrusted to its care. Such a curtailment would bring about a state of confusion which would operate adversely to the common good of the citizens and their children. While these disconcerting factors cannot permit this court to avoid the unpleasant duty of declaring unconstitutional a statute which violates one of the most fundamental principles of the State Constitution, yet they must be taken into consideration in determining whether the threatened emergency of serious proportions compels this court to invoke its general power to suspend or stay the operation of an injunction decree, on a modified basis, until the Legislature convenes in regular session, when it may pass the necessary enabling statute, so that in the interim the schools may have ample means to function without an injurious curtailment of revenue.

*Wilson v. School Dist. of Philadelphia,* 328 Pa. 225, 195 A. 90, 101 (1937). The United States Supreme Court has also utilized stays to allow the legislature to act following the Court's declaration of a statute or practice to be unconstitutional:

We also draw on the Court's practice in the apportionment and voting rights cases and stay, for a period not to exceed 30 days, the Court's judgment insofar as it affects the authority of the Commission to exercise the duties and powers granted it under the Act. This limited stay will afford Congress an opportunity to reconstitute the Commission by law or to adopt other valid enforcement mechanisms without interrupting enforcement of the provisions the Court sustains, allowing the present Commission in the

interim to function de facto in accordance with the substantive provisions of the Act.

*Buckley v. Valeo,* 424 U.S. 1, 142–143, 96 S.Ct. 612, 46 L.Ed.2d 659 (U.S.1976).

I agree that, unlike some of the cases cited above, Allegheny County could act in accordance with our decision in *Clifton* without a legislative determination of the appropriate criteria for testing uniformity. However, as noted previously, denying the stay, absent trial court intervention, subjects Allegheny County, its municipalities, school districts, and citizens to the costs of at least a third reassessment and, should the General Assembly act subsequent to that third reassessment, possibly a fourth. It is simply not responsible for the judiciary to follow this path when the suggested stay is a simple and harmless solution.

Moreover, it appears that the General Assembly already is beginning to act to address our decision in *Clifton.* The House adopted a resolution to conduct a study comparing Pennsylvania's property reassessment system with those in other states, particularly Maryland and California, H.R. 334, and is considering legislation to place a moratorium on court-ordered property reassessments, H.B. 1661 (committed to Appropriations Committee as recently as July 15, 2009). While these measures constitute a significant step toward addressing the constitutional question raised in *Clifton,* there may be serious constitutional separation of powers issues with a legislative moratorium on court reassessment orders. I believe the better method for approaching this complex governmental problem would be for this Court to grant the stay, allow the General Assembly time to consider options to amend the assessment system, and then allow Allegheny County to conform its assessment system to those amendments.

For over a decade, Allegheny County has been in chaos regarding its assessment system. By allowing the General Assembly six months to contemplate a statewide solution, we could spare Allegheny County from interim reassessments, and avoid a constitutional conflict with the House's attempt to

place a moratorium on court-ordered reassessments-all without any dramatic harm to the Appellees in this case. Moreover, the stay might prevent a flood of litigation questioning the constitutionality of the assessment system of Pennsylvania's other counties.

I acknowledge that the majority of my colleagues on the Court do not favor granting stay. Therefore, while I note that the stay will be denied by this Court, I also recognize that our denial is without prejudice, and accordingly, there is no impediment to the County seeking a stay before the trial court, based upon the same rational presented to this Court. I, for one, would urge the trial court to grant the stay, if it is sought.